**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. KENNETH ESDALE, Defendant. | Civ. Action No. 05-2046 (KSH) |
| STATE OF NEW JERSEY, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | Civ. Action No. 08-527 (KSH) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

      The United States Marshal Service ("USMS"), which is a component of the United States Department of Justice ("DOJ"), is principally responsible for the administration of the DOJ's Asset Forfeiture Program. The USMS maintains, manages, and disposes of assets

1

seized by the branches of the Department of Justice, including the Federal Bureau of Investigation and the Drug Enforcement Administration. After an asset is seized, the USMS holds title to the asset and is authorized to retain the property for official use, to transfer the property to any Federal agency or to any State or local law enforcement agency that participated directly in the seizure or forfeiture of the property, or sell the asset by public sale or any other commercially feasible means. Proceeds from the sales of assets go into the DOJ's Asset Forfeiture Fund to be reinvested in law enforcement activities and to pay costs incurred in managing and disposing of seized property.

As provided for by the USMS Real Property Manual, seized real estate is typically sold at public auctions or by referring the property to brokers under a formal contract or listing agreement. In October of 1998, the USMS began a pilot program in the District of New Jersey, whereby forfeited real property could be disposed of quickly by utilizing the network of realtors associated with Fannie Mae, a financial services company serving the American home mortgage industry. Under the pilot program, forfeited properties did not have to be sold at auction or referred to brokers under a formal contract or new listing agreements, which placed greater control over the manner in which assets were sold in the hands of then-Chief of the USMS' Asset Forfeiture Unit ("AFU") for the District of New Jersey, Dominick Russo ("Russo").

Russo executed several real property sales in the manner provided for by the pilot program, routing the properties through licensed real estate agent Patricia Eichelsdoerfer ("Eichelsdoerfer"). This matter concerns one of those sales.

**II. FACTS**

The record includes all the documentation comprising the transaction at issue, and thus the facts material to the resolution of the cross-motions before the Court are largely undisputed. The real estate came into play when on March 5, 1999, Judge J. Curtis Joyner, United States District Judge for the Eastern District of Pennsylvania, entered a Preliminary Forfeiture Order against two criminal defendants providing for the forfeiture to the United States of all of their rights, title, and interest in the property located at 2110 Bay Avenue, Ocean City, New Jersey. (Compl. ¶¶ 18-19.) Kenneth Esdale ("Esdale") first learned of the Ocean City property from Russo on March 26, 1999, at an auction where the USMS was selling forfeited automobiles. (Stip. of Facts ¶ 17, Final Pretrial Order, docket entry # 28.) Eric Turnquist ("Turnquist"), another attendee, overheard the conversation between Esdale and Russo regarding the property and inquired about its availability. (Stip. of Facts ¶ 20.) Russo gave Turnquist his business card and told him to make a follow-up call. (Stip. of Facts ¶ 21.)

About a month after the automobile auction, on April 18, 1999, Russo executed a listing agreement with Blue Realty, with Eichelsdoerfer acting as the real estate agent, providing that the Ocean City property would be listed for sale at a price of $650,000 on the Multiple Listing Service ("MLS") (Compl. ¶ 43; Stip. of Facts ¶ 28.). But Eichelsdoerfer never placed the Ocean City property on the MLS. (Stip. of Facts ¶ 29.) Around this time, in early April, Turnquist contacted Russo by telephone and was told to direct his inquiries about the Ocean City property to Eichelsdoerfer. (Stip. of Facts ¶ 23.) Turnquist viewed a video presentation of the property but nothing further came of his interest. (Stip. of Facts ¶ 24.) About a week after executing the listing agreement with Eichelsdoerfer, on April 28,

1999, Russo, acting in his official capacity as Chief of the AFU for the District of New Jersey, entered into a contract to sell the property to Esdale for $465,000 in cash. A quitclaim deed transferring the property was executed on October 1, 1999. (Ex. 21 to Pl.'s Summ. J. Mot., docket entry # 37-6.)

**III. DISCUSSION**

On April 8, 2005, the United States filed this lawsuit to recover the Ocean City property from Esdale. The government, characterizing the sale as an unlawful conversion that unjustly enriched Esdale, contends that the Court must call upon its powers in equity to void the sale and return the property to the government. Currently before the Court are cross-motions for summary judgment. The government moves for summary judgment on four of its five claims, including constructive trust, rescission, unjust enrichment, and conversion. Esdale moves for summary judgment on all counts, including Count Three of the Complaint, the government's False Claims Act claim. This opinion also addresses the municipal court action involving the Ocean City property that was removed to this Court on January 25, 2008.[1]

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) authorizes a court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A material fact is a fact

---

[1] State of New Jersey v. United States, Civ. Action No. 08-527 (KSH), is an action against the United States for violating Ocean City Ordinance Number 23-11 by failing to repair or replace the bulkhead of the Ocean City property at issue here. The government removed the matter pursuant to 28 U.S.C. § 1442.

"that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B. Contractual Rescission

The government moves for summary judgment on its contractual rescission claim, Count Two of the Complaint, arguing that the Court should rescind the contract because the sale of the property was beyond the scope of Russo's authority under 28 U.S.C. §§ 2001 and 2002. (Pl.'s Br. Summ. J. 17-18, docket entry # 37-9.) This argument, however, confuses the inquiry. 28 U.S.C. §§ 2001 and 2002 only address the requirements for a judicial sale, which is a sale executed by a person legally appointed by a court for that specific purpose. In enacting those provisions, Congress intended to limit the judiciary's ability to dispose of property, not the executive's ability. See The Cumberland Lumber Co. v. Tunis Lumber Co., 171 F. 352, 356 (4th Cir. 1909). Because Russo acted in his capacity as Chief of the AFU under the authority provided to him under 28 C.F.R. § 0.111(i) and not as an agent of the court, the sale at issue here was not a judicial sale and did not have to conform to the requirements of 28 U.S.C. §§ 2001 and 2002. Marks v. United States, 24 Cl.Ct. 310 (Ct. Cl. 1991), which the government also relies on, involved a judicial sale and is inapposite here.

"Under general principles of contract law, rescission is an equitable remedy and only available in limited circumstances." Cooper v. Borough of Wenonah, 977 F. Supp. 305, 316 (D.N.J. 1997) (citing Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336 (1986)). "Even where grounds for rescission exist, however, the remedy is discretionary…." Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336 (Ch. Div. 1986) (citations omitted). "In addition, a court must apply rescission only in circumstances where it is clear that the court can return the parties to the ground upon which they originally stood." Mercedes-Benz

USA LLC v. Coast Auto. Group, Ltd., 2006 U.S. Dist. LEXIS 71953 (D.N.J. 2006) (citations and internal quotation marks omitted).  These considerations highlight the serious problems with granting the relief the government seeks.

Almost a decade has passed since Esdale bought the Ocean City property.  He has paid property taxes and maintained the property.  It is impossible to undo the past nine years and return the parties to the ground upon which they originally stood, especially regarding valuation.  Questions on this point abound.  Would any of the purchase price recoverable to Esdale be offset by a rental charge?  How do we account for any changes in the property value?  What about any loans or other financial vehicles tied to the value of the home?  Would Esdale or the government be entitled to interest?  During oral argument, the Court sought guidance from the government on how the rescission would actually play out and the government responded:

> Your Honor, the way a rescission and the way I truly believe this case should resolve itself is that the property come back into the Marshal Service for a true public sale and that Mr. Esdale would be given back his purchase price [of $465,000].

(Oral Argument Tr. 44:12-44:16.)  This result, however, would not account for the questions raised by the Court above and, because Esdale assumed all the rights, responsibilities, and risks attached to ownership of the Ocean City property for over nine years, such a result would not return the parties to the ground upon which they originally stood.

The considerations driving this Court's ruling on the rescission claim also informed the decision in Hilton Hotels Corp. v. Piper Co., which involved the sale of a motel and pub in Brigantine, New Jersey.  There, the court dismissed the defendant's rescission claim

because the amount of time that had passed since the original transaction, and the resulting financial entanglement with respect to the property, foreclosed applying the rescission remedy. It noted, "Any effort to return these parties to the position they held six years ago is neither realistic nor fair…Hilton [has] occupied the premises and been deprived of its $3,250,000 during all of this time…." Hilton Hotels Corp., 214 N.J. Super. at 336. See also Walter v. Holiday Inns, Inc., 784 F. Supp. 1159, 1166 (D.N.J. 1992) (Ten years since the initial buy-out made it "virtually impossible for the court to "unmake" the buy-out transaction so as to restore the parties to the status quo ante"); Mercedes-Benz USA, 2006 U.S. Dist. LEXIS 71953 (D.N.J. 2006) ("The passage of time in this case and the complicated relationship between the parties demonstrate to the Court that a return to the "ground upon which they originally stood" would be an exercise in futility").

Rescission is an equitable remedy and is entirely discretionary. The Court has serious concerns about the fairness of the result proposed by the government and, based on those concerns, declines to exercise that discretion. Simply put, contractual rescission here would be inappropriate. The government's motion for summary judgment on the rescission claim is denied, and Esdale's motion on that count is granted.

### C. Constructive Trust

Esdale moves for summary judgment on the constructive trust claim, Count One of the Complaint, arguing that the government "has not demonstrated the essential elements necessary to establish a *prima facie* case for the imposition of a constructive trust," specifically the unjust enrichment requirement. (Def.'s Br. Summ. J. 18, docket entry # 40.)

A court can impose a constructive trust "upon any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff."

Skretvedt v. E.I. Dupont de Nemours, 372 F.3d 193, 213 (3d Cir. 2004) (internal citations omitted). The Third Circuit has explained that the purpose of a constructive trust is "to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant." Id. The touchstone of the constructive trust doctrine is unjust enrichment. First Interregional Advisors Corp. v. Goldin, 218 B.R. 722, 730 (Bankr. D.N.J. 1997) (quoting Black's Law Dictionary 1535 (6th ed. 1990)). In its haste to prove that Esdale engaged in wrongful conduct, the government's theory of the case misses the mark.

The government acknowledges that wrongful conduct is not the focus of the constructive trust doctrine -- it is unjust enrichment. It explains in its opposition brief that "the law of constructive trust in New Jersey does not require a showing of fraudulent intent of the constructive trustee – or of fraud at all…." (Pl.'s Opp'n Br. Summ. J. 6, docket entry # 50.) And even though the government appeared to recognize that its principal evidentiary burden with respect to its constructive trust claim is to make a showing that Esdale would be unjustly enriched if the property remained in his hands, it fails to posit evidence that this Court may rely on to support a finding of unjust enrichment. The government's own appraisals in 1998 and 1999 valued the Ocean City property at $502,000 and $500,000. (Exs. E and F to Perle Decl., docket entries # 41-6 and 41-7.) Esdale purchased it for $465,000, *which represents 93% of the appraised value*. This fact leaves the Court perplexed about how a sale that approximated the government's own valuation can now be characterized as one that unjustly enriched Esdale.

When the Court raised this point with the government, the response was reliance on the deposition testimony of Ronald Weick ("Weick"), the previous owner of the Ocean City property, and a February 2006 limited appraisal commissioned by the government for this litigation. As to the first, Weick opined in his deposition that the property was worth $1 million (Weick Dep. 75:5-75:9, Ex. B to Silbermann Decl., docket entry # 50-2). But this remark, not supported by any further evidence, arises out of Weick's self-interest. Weick was convicted, sentenced, and facing a $3 million judgment. The higher the price obtained from the sale of his forfeited residence, the greater the offset against his judgment. Weick's opinion evidence is not persuasive in the context of the other evidence of value, including the government's own contemporaneous appraisals, and does not raise a genuine fact issue about the value of the Ocean City property.

As to the other valuation, the February 2006 limited appraisal valuing the property at $615,000 (Final Pretrial Order 4-9, docket entry # 28), the government referred to "dueling experts" in oral argument, suggesting that this appraisal has sufficient weight to create a fact issue and support the unjust enrichment element. (Tr. 39:17-39:19) But this ignores the fundamental problem with using a 2006 appraisal, no matter how accurately it reflects current valuation adjusted for time, to trump two contemporaneous appraisals. Almost a decade has passed since Esdale purchased the home, rendering a valuation based on the property in its current state speculative. There is simply no way to distinguish what diminution or increase in value resulted from Esdale's contributions. It would also be a puzzling result, particularly handed down by a court sitting in equity, to allow the government to disregard the valuations that presumably would have been used to sell the

property in 1999 or 2000, so that it can now sell the property at a higher price, with the maintenance and improvement costs born by Esdale for almost a decade.

At the summary judgment stage, the Court's role is to evaluate the record before it, and the government has failed to carry its evidentiary burden to demonstrate how Esdale would be unjustly enriched if the Court does not impose a constructive trust. Thus, the government's motion for summary judgment on the constructive trust count is denied, and Esdale's motion on that count is granted. Both sides also move for summary judgment on the government's conversion and unjust enrichment claims, Counts Four and Five of the Complaint. (Def.'s Br. Summ. J. 21, docket entry # 40.) These two counts necessarily fold into the Court's analysis of the constructive trust claim, because the imposition of a constructive trust requires a finding of unjust enrichment and the conversion claim is precluded by the Court's determination that Esdale is the rightful owner of the property. Therefore, the government's motion for summary judgment on the unjust enrichment and conversion claims is denied, and Esdale's motion on those counts is granted.

### D. Esdale's Counterclaim for Recoupment

Esdale's answer asserted a counterclaim for recoupment, alleging that the government by and through its agents neglected to disclose existing hidden damage to the Ocean City property, specifically damage to the bulkhead. The government moves for summary judgment on the recoupment counterclaim. In his opposition brief, Esdale explained that "if the Court grants defendant's separate motion for summary judgment, the Court need not even reach the recoupment counterclaim, as the issue will then have been rendered moot." (Def.'s Opp'n Br. Summ. J. 40, docket entry # 46.) During oral argument, Esdale's counsel further clarified his position with respect to recoupment: "I think that the

bulkhead issue comes in only in the sense that if the government prevails it must be used as a setoff." (Oral Argument Tr. 78:17-78:20.) Given the Court's rulings on the constructive trust, conversion, unjust enrichment and contractual rescission claims, the government has not prevailed and the counterclaim does not need to be used as a setoff. Accordingly, the Court dismisses the counterclaim as moot.

### E. False Claims Act

Esdale moves for summary judgment on the government's False Claims Act claim, Count Three of the Complaint, contending that the government has not provided evidence that Esdale committed a wrongful act within the meaning of the statute. The applicable sections of the Act provide for liability where a person "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. § 3729(a)(3), or "knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property," 31 U.S.C. § 3729(a)(6). The statute defines the terms "knowing" and "knowingly" to mean that a person: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b).

To demonstrate that Esdale violated the False Claims Act, the government contends that Esdale conspired with Russo to defraud the government.

Esdale's attorney pointed out at oral argument that the government has committed to a factual position in its Answers to Interrogatories that must govern the Court's review of the record.

11

> 9. Set forth the <u>date</u> that plaintiff alleges Mr. Esdale entered into a "combination" with Mr. Russo (as alleged in paragraph 54 of the complaint) and indentify the source of said date.
>
> Answer: The precise date that Mr. Esdale entered into this combination is not clear. However, this combination is likely to have commenced during the 33-day period from March 26, 1999, when Mr. Esdale claims to have first learned of the sale from Mr. Russo at a car auction, and April 28, 1999, when Mr. Esdale succeeded in dissuading Mr. Turnquist from bidding on the property and sent a one-page note to Ms. Eichelsdoerfer that read "Finally!"

(Answer Interrogs. 6 no. 9, Ex. D to Perle Decl.) Esdale argues persuasively that the extensive discovery that the parties have conducted contradicts the government's assertions that Esdale entered into a conspiracy or illegal combination with Russo during this (or any other) period. Significantly, in his deposition testimony, Special Agent Eric Blachman admitted that, "[I] did not find any telephone calls between Dominick Russo, whether it be from his home phone or Government calling card or Government cell phone, to Kenneth Esdale." (Blachman Dep. 41:15-41:19, Ex. L to Perle Decl.) And during oral argument, the government could not cure the lack of evidence beyond promising that it would produce better evidence at trial.

The government also contends, because it is the difference between $465,000 and $500,000 and because the deed transferring the property to Esdale was executed on October 1, 1999, that Esdale paid Russo $35,000 as a kickback in exchange for steering the property his way based upon an unexplained deposit to Russo's bank account in October of 1999. But Agent Blachman's deposition testimony fatally undercuts this theory:

> Q. Do you have any evidence, whether it's factual testimony, documentary or the – the product of any interviews that you or anyone else may have conducted that places Mr. Esdale as the source of any funds Mr. Russo deposited, either the last week of September or sometimes early part of October 1999?

    A.    No.

(Blachman Dep. 185:9-185:16.)  This is devastating testimony, given how broadly the question is posed.  When confronted during oral argument on this point, the government answered:

> The facts that Mr. Esdale carried around – carries until this day, since high school in his deposition testimony said, thousands of dollars in cash – tens of thousands I think he even said at one point, in his pocket…Mr. Russo put $35,000 of cash into his bank account from no source which can be identified.

(Oral Argument Tr. 48:19-48:23 and 49:25-50:1.)  The Court does not need to lecture the government on how its representation about the contents of Esdale's pockets falls short of countering its own agent's direct response that *no evidence* ties Esdale to the bank deposit into Russo's account.  The temporal argument – mysterious deposit in October to Russo's bank account coincides with deed recordation – is hardly enough to provide evidentiary support for a conspiracy, standing alone in the face of Agent Blachman's testimony.  Even there, however, the fully developed facts demonstrate coincidence rather than suspiciousness.  The real activity in buying the property occurred months before, and the deed was finally recorded in October after delays with paperwork resolved.

    The government also relies on the fact that Esdale contacted Turnquist to dissuade him from purchasing the Ocean City property.  This assertion constitutes only marginal support for a secret deal between Russo and Esdale.  If such a deal existed, Turnquist would not be a threat.  And one potential buyer's attempt to dissuade another potential buyer is a common, and lawful, occurrence, and no one disputes that Esdale wanted the property.  Likewise, Esdale's alleged statements to neighbors and Weick that he "stole" the property, a common colloquialism, are not probative of wrongdoing.

That Esdale allegedly carried cash around, and sought to dissuade a rival purchaser, and was delighted with the price, does not add up to sufficient evidence to support a finding of wrongdoing in the context of the False Claims Act.  The government's burden here is to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.  31 U.S.C. § 3731(c).  Esdale argues that summary judgment should be granted in his favor on the False Claims Act claim, because "[t]he record is simply void of any evidentiary proofs to show that Esdale engaged in any 'wrongdoing' whatsoever." (Def.'s Br. Summ. J. 23.)  The Court agrees.  The government's *prima facie* showing rests on mere speculation, never rising to the level of "knowing" wrongdoing as required by the Act, particularly in light of the fact that Congress specifically amended the scienter requirement in 1986 to make "firm…its intention that the Act not punish honest mistakes or incorrect claims submitted through mere negligence." S.Rep. No. 99-345, 99th Cong., 2d Sess., at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272.  The Court concludes that the government's proofs do not establish a violation of the Act, and grants Esdale's motion for summary judgment on the False Claims Act claim.

**F.  State of New Jersey v. United States**

On January 25, 2008, the government removed to this Court a case filed by the City of Ocean City, New Jersey, that was pending before the Ocean City Municipal Court.  (Notice of Removal, Civ. Action 08-527.)  State of New Jersey v. United States, Complaint Number SC-2007-040724, alleges that the United States violated Ordinance Number 23-11 by failing to repair or replace the bulkhead of the Ocean City property at issue here.

28 U.S.C. § 1442 provides for removal of a case to federal district court where the United States or any agency thereof is a party, or where officers of the Courts, members of

14

Congress or members of the armed forces of the United States are charged with state crimes. 28 U.S.C. § 1447(c) governs removal procedure and provides that, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The plain language of the statute "allows and indeed compels a district court to address the question of jurisdiction, even if the parties do not raise the issue. Moreover, the general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* applies equally in removal cases." Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995).

The Court's rulings here vitiate the basis for removal of the municipal action to this Court, because the determination that the property belongs to Esdale means that the United States is no longer an appropriate party to the municipal action. With the United States no longer a party, this Court lacks removal jurisdiction under 28 U.S.C. § 1442 and must remand the municipal action to the Ocean City Municipal Court.

**VI. CONCLUSION**

Based on the forgoing, the Court denies the government's motion for summary judgment in its entirety and grants Esdale's motion for summary judgment on: (1) the constructive trust claim, Count One of the Complaint; (2) the contractual rescission claim, Count Two of the Complaint; (3) the False Claims Act claim, Count Three of the Complaint; (4) the conversion claim, Count Four of the Complaint; and (5) the unjust enrichment claim, Count Five of the Complaint. As a result, the Complaint against Esdale cannot stand, and the case is dismissed. In addition, the Court dismisses Esdale's recoupment counterclaim

as moot and remands the municipal action to the Ocean City Municipal Court. An appropriate order will be entered.


Dated:  March 31, 2008                              <u>/s/ Katharine S. Hayden</u>

                                                    Katharine S. Hayden, U.S.D.J.